IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANGELO LEE CLARK,

        Plaintiff,

   v.

ROBERT COUPE, *et al.*,

        Defendants.

Civil Action No. 17-cv-00066-RGA

MEMORANDUM ORDER

Before me is the Defendants' Motion for Summary Judgment. (D.I. 172). I heard remote oral argument on this motion on January 12, 2021. (D.I. 185). The motion is fully briefed. (D.I. 173, 180, 186). For the reasons set forth below, Defendants' motion is DENIED.

I.    BACKGROUND

Angelo Lee Clark, an inmate at James T. Vaughn Correctional Center until August 2019,[1] was placed in the Secured Housing United ("the SHU") from January 22, 2016 to August 18, 2016. (D.I. 173 at 4; D.I. 180 at 6). The SHU is a form of restrictive housing or solitary confinement.[2] During his time at the Correctional Center, Mr. Clark was classified as having a "serious mental illness" and was diagnosed with several conditions including schizoaffective disorder, antisocial personality disorder, and bi-polar disorder, among others. (D.I. 173 at 4; D.I. 180 at 1).

---

[1] In August 2019, Mr. Clark was moved to a psychiatric center. (D.I. 173 at 6).
[2] The Parties appear to disagree on whether Mr. Clark was truly in solitary confinement or in "restrictive housing." The Parties also cite different numbers for how many hours per week Mr. Clark was kept alone in his cell in 2016. (D.I. 173 at 8; D.I. 180 at 11). For purposes of this motion, I believe it is clear enough that Mr. Clark was subjected to severe restrictions on his contact with other inmates and staff.

1

Before he was placed in the SHU, Mr. Clark was involved in a fight where he punched another inmate in the back of the head twice. (D.I. 173 at 4).  Prior to this incident, Mr. Clark's medications had been changed and he had been experiencing auditory hallucinations. (D.I. 180 at 6 (citing D.I. 181, Ex. 7 at 34-35); *see also* D.I. 181, Ex. 1 at DOC 000324-25).

As the result of his seven-month placement in the SHU, Mr. Clark asserts a deliberate indifference claim and a retaliation claim against several prison officials. (D.I. 180 at 13, 17). Six Defendants, each at the relevant time a high-ranking official in the Delaware Department of Correction, remain in this action: Robert Coupe, Perry Phelps, David Pierce, Jeffery Carothers, Marcello Rispoli, and Roland Wiley. (D.I. 173 at 1; *see also* D.I. 92 ¶¶ 20-23, 25-26). Defendants have moved for summary judgment on both claims.

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams*

*v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### III. DISCUSSION

#### A. Plaintiff's Deliberate Indifference Claim

Defendants argue they are entitled to summary judgment because the record does not establish that they were deliberately indifferent to Mr. Clark's mental illness. (D.I. 173 at 10).

The Supreme Court defined a subjective test for deliberate indifference in which "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Analyzing deliberate indifference in the context of medical treatment, the Third Circuit has held that the "deliberate indifference to the serious medical needs of prisoners [is] sufficiently egregious to rise to the level of a

constitutional violation." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (quoting *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990)) (internal quotations omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  While "allegations of mere negligent treatment or even medical malpractice do not trigger the protections of the Eighth Amendment," the provision of medical care may be insufficient to avoid a finding of deliberate indifference. *Palakovic v. Wetzel*, 854 F.3d 209, 227-28 (3d Cir. 2017).  For example, deliberate indifference that leads to the choice of an "easier and less efficacious treatment" amounts to an Eighth Amendment violation. *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978).  In 2017, the Third Circuit held that subjecting mentally ill inmates to "the harsh and unforgiving confines of solitary confinement" can amount to deliberate indifference. *Palakovic*, 854 F.3d at 229.

Defendants do not dispute that Mr. Clark was suffering from a serious medical need. (D.I. 173 at 12; D.I. 180 at 14).  Instead, Defendants argue that Mr. Clark received "prompt and thorough mental health care" while in the SHU and thus they cannot be considered deliberately indifferent to his mental health needs. (D.I. 173 at 11-12).

At oral argument, as in his brief, Plaintiff argued that placing Mr. Clark in the SHU amounted to the deprivation of any meaningful treatment for his mental illness, particularly considering that placement in solitary confinement can be especially harmful for those with mental illnesses. (*See* D.I. 180 at 11).  Plaintiff's brief cites to the 2015 audit of Delaware prisons which found "there was inadequate mental healthcare provided in restrictive housing units." (Id. at 15).  Plaintiff also cites testimony from Warden Pierce and Mr. Clark's medical records demonstrating that the psychological care that he received in the SHU was brief and

"perfunctory." (Id. at 12 (citing D.I. 181, Ex. 8 at 348:13-21; Ex. 11 at 003560-003598)).[3] DOC apparently discouraged requests from mental health staff for more access to inmates in the SHU. (D.I. 181, Ex. 17 at 82:9-14).

Plaintiff also cites evidence that Defendants were aware of the risks to placing mentally ill inmates in solitary confinement. Both Warden Pierce and Commissioner Coupe testified that they were aware of lawsuits, legislation, or general concern surrounding placing mentally ill inmates in solitary confinement. (D.I. 181, Ex. 4 at 107:4-24; Ex. 8 at 162:15-20, 200:10-19). Indeed, Delaware Department of Correction Policy No. E-09, relating to "Segregated Offenders," recognizes "severely mental ill" inmates as inmates whose "conditions would be contradictory to confinement [in segregation] or would require special accommodations." (D.I. 181, Ex. 14 at DOC 012877). One of Mr. Clark's nurses in August 2015[4] voiced concern about Mr. Clark's placement in SHU with her boss, Ms. Sexton, writing, "He will decompensate totally if left there." (D.I. 181, Ex. 31 at WW2808). Ms. Sexton replied, "[Mr. Clark] was discussed at [the multi-disciplinary team][5] and they are aware of our concerns." (D.I. 181, Ex. 31 at WW2807).

The facts cited by Plaintiff are sufficient to raise a material question of fact as to whether Defendants were deliberately indifferent to Mr. Clark's serious medical needs while he was segregated in the SHU. Plaintiff cites to evidence that several Defendants were aware of the serious risks of placing individuals like Mr. Clark in solitary confinement and that, while in

---

[3] Plaintiff also cites to the Complaint filed in 2015 by the Delaware Community Legal Aid Society challenging the Delaware Department of Corrections' policies on the use of solitary confinement for mentally ill prisoners. (D.I. 181, Ex. 29).
[4] Mr. Clark was in SHU for fifteen days in 2015 (and other years that predate the statute of limitations). (D.I. 92 ¶ 11). At oral argument, Plaintiff's counsel stated that the treatment in 2015 while in SHU housing was included within the deliberate indifference claim, although the 2016 seven-month placement has been the focus of the case.
[5] The multi-disciplinary team is a combination of individuals from the security, medical, and mental health teams. (D.I. 173 at 7).

isolation, Mr. Clark did not receive adequate medical care, which worsened his condition. (*See* D.I. 181, Ex. 7 at 40, 48-49).

Defendants did not offer any argument that Plaintiff's claim may fail against any individual Defendant based on his personal actions. Thus, summary judgment must be DENIED on the deliberate indifference claim as to all Defendants.

### B. Plaintiff's Retaliation Claim

Defendants move for summary judgment on Plaintiff's retaliation claim, arguing that the decision to place Mr. Clark in the SHU was not motivated by his mental illness. (D.I. 173 at 12-13).

To succeed on a retaliation claim, Plaintiff must show (1) that he engaged in constitutionally protected activity,[6] (2) that prison officials took an adverse action against him; and (3) there is a causal connection between the protected activity and the adverse action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). If Plaintiff carries his burden of establishing by a preponderance of the evidence[7] that the protected conduct was a "'substantial or motivating factor' in the decision to discipline him," then the burden shifts to Defendants to prove by a preponderance of evidence that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001).

---

[6] I am still not exactly sure what Plaintiff's theory is as to what the constitutionally protected activity is that he is alleging. (*See* D.I. 82 at 8 n.7). The Second Amended Complaint says "First and Fifth Amendment rights" and specifies the activity as "requesting medical treatment," "requesting for explanations of why he was in the SHU," "mental illness and manifestations thereof," and "providing information and assistance in the 2006 DOJ Investigation." (D.I. 92 at 34). The last one, if it were not a decade old, would be plausible as a first amendment theory. I am dubious that the other three implicate the first amendment. At oral argument, when I asked about this, I believe Plaintiff said the retaliation claim was based on the Eighth Amendment.

[7] *Rauser* does not explicitly state that Plaintiff's burden is a preponderance of the evidence burden, but it seems to me clear from the Court's reliance upon *Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977), that Plaintiff's burden is a preponderance of the evidence.

6

Defendants argue causation. They assert that Mr. Clark was placed in the SHU for assaulting another inmate, not because of his mental illness. (D.I. 173 at 13-14). Defendants argue that the mental health assessment conducted for Mr. Clark's disciplinary hearing does not show a causal connection between his placement in the SHU and his mental illness, and further cite testimony from a mental health clinician that Defendants interpret as meaning the medical providers "could not correlate an inmate's behavior one-hundred percent [] to that inmate's mental illness."[8] (*Id.* at 14 (citing D.I. 174 at A-852)).

Assuming Plaintiff has put forth enough evidence to meet his burden of showing Plaintiff's mental illness was a substantial or motivating factor in his placement, Defendants argue that Mr. Clark's placement in SHU was nevertheless supported by a legitimate penological interest. (D.I. 173 at 14). Defendants cite to two previous disciplinary write-ups Mr. Clark received and note that restrictive housing is the safest option for inmates "prone to become violent." (*Id.*, citing D.I. 174, A-313, A-453, A-665, and A-681).[9,10]

Plaintiff argues that the motivation for Mr. Clark's placement in SHU is clear on the face of the "Mental Health Review of Disciplinary Charges" document. (D.I. 180 at 19). This document

---

[8] The cited text in support of this statement is solely from the deposition of Stephanie I. Streets, a former mental health clinician at James T. Vaughn Correctional Center. (D.I. 174 at A-836). She was asked, "Was it your experience that the behaviors associated with a given individual's mental health landed him in SHU?" She replied, "Not necessarily. I would say that the majority of the time, yes, it had something to do with their mental health, whether it was instability, medication, non-compliance, those types of things, but also the behavior itself I wouldn't necessarily tie 100 percent to the fact that they had a mental illness." (D.I. 174 at A-852). It takes a lot of interpretation to make much sense of this answer, and, in the summary judgment context, viewing the evidence in the light most favorable to Plaintiff, I cannot accord this statement any value as diminishing Plaintiff's position that he was put in SHU because he was mentally ill.

[9] I am not sure why A-313 is cited. At A-453, Defendant Pierce characterizes Plaintiff as "[p]rone to violent, explosive behavior." At A-665, based on prison records, there is an explanation for why Clark was recommended for classification as medium security in August 2015 based on two July 2015 write-ups, one for "damages greater than $10.00" and the other for "DTB" or "disorderly and violent behavior." At A-681, the damages greater than $10 is explained as a cracked window caused by Plaintiff punching it.

[10] Defendants also rely upon *Brown v. Pennsylvania Dep't of Corrections*, 290 F. App'x 463, 466 (3d Cir. 2008), in support of their retaliation argument. (D.I. 173 at 14). For that purpose, the case is not well-suited, as the retaliation claims were "waived" on appeal. *Id*. at 465 n.3.

reports as the "Reason for placement in Segregation" that Mr. Clark was "not getting his meds" and "states he is hearing voices." (D.I. 181, Ex. 1 at DOC 000325). The document was dated January 23, 2016, one day after Mr. Clark was placed in the SHU. (D.I. 181, Ex. 1 at DOC 000324; Ex. 12 at DOC003598; Ex. 16 at DOC012864). Perhaps there is an explanation, but the reasons stated on the document for placement in SHU are mental health reasons.[11] This plainly contradicts Defendants' proffered rationale.

Plaintiff further argues that he does not need to demonstrate that the fight involving Mr. Clark was 100% the product of his mental illness. (D.I. 180 at 18-19). Nevertheless, Plaintiff has offered expert testimony that "to a reasonable degree of medical certainty that mental health clinicians recognize that the man was psychotic and not in his normal state of mind . . . that indicates that his behavior was the result of his mental illness." (D.I. 181, Ex. 32 at 62:8-17).

I agree that Plaintiff does not need to establish the reason for Mr. Clark's assault to a 100% certainty. The correct focus is Defendants' rationale for Mr. Clark's placement in the SHU. *See Mitchell*, 318 F.3d at 530; *Rauser*, 241 F.3d at 333. The "Mental Health Review of Disciplinary Charges" document cited by Plaintiff clearly raises a material issue of fact as to whether Mr. Clark was placed in the SHU because of his mental illness. Defendants have cited no evidence in support of their claim that Mr. Clark's placement in SHU was the "safest option." (D.I. 173 at 14). Thus, Defendants have not met their burden of demonstrating that the decision to place Mr. Clark in the SHU for seven months was supported by legitimate penological interests.

As Defendants have not offered any analysis as to how Mr. Clark's retaliation claim applies to any individual Defendant, summary judgment is DENIED as to all six Defendants.

---

[11] During the seven months that Plaintiff was in SHU in 2016, there are entries approximately every other day in Plaintiff's medical records recording an "Assessment," which is almost always, "Stable, no signs of decompensation at this time. Lethality is low." (D.I. 181, Ex. 12 at DOC003561 – DOC003598).

## IV.     CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (D.I. 172) is **DENIED.**  IT IS SO ORDERED this 20th day of January 2021.

/s/ Richard G. Andrews<br>
United States District Judge