IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANTOINE CLARK, as personal representative for ANGELO LEE CLARK,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT M. COUPE and DAVID PIERCE,<br><br>Defendants. | Civil Action No. 17-66-RGA |

MEMORANDUM ORDER ON MOTIONS IN LIMINE

Defendants filed two motions in limine. (D.I. 318-1, Ex. 6).[1] The first one seeks to limit Dr. Grassian's testimony. (*Id.* at 80–82 of 104). The second one seeks to preclude testimony "inconsistent with [the] jury verdict" rendered in the first trial of this case. (*Id.* at 90–91 of 104).

A similar issue is presented by Defendants in the proposed pretrial order, where they request two related "statement[s] of facts that are admitted and require no proof." (D.I. 318 at 2–3, ¶¶ 20–21). I held a pretrial conference on June 17, 2024. (*See* D.I. 322).[2]

As background, Plaintiff, a deceased former inmate who had severe mental illness, advanced three Eighth Amendment theories. First, that Defendants were liable for his placement into solitary confinement because of his mental illness. (D.I. 248 at 685). Second, that Defendants were liable for depriving him of adequate medical care for his mental health illness while he was in solitary confinement. (*Id.* at 685–86). The first and second theories were

---

[1] I have also considered Plaintiff's recent letter. (D.I. 325).

[2] Citations to the transcript of the pretrial conference, which is not yet docketed, are in the format "Pretrial Tr. at __."

1

rejected by a jury in 2021.³ (D.I. 237). Third, that Defendants are liable for allowing Plaintiff to stay in solitary confinement for seven months when they knew that such confinement posed an excessive risk to Plaintiff's health and safety. (D.I. 323 at 7). The third theory is scheduled for trial next week.

Dr. Grassian testified in the first trial. There, in broad strokes, he addressed three topics.

> Well, first, I'm going to try to provide opinions generally regarding the psychiatric effects of solitary confinement from what my experience with it and review of the literature. And then regarding the specific, this specific case, my opinions regarding the effect on Angelo Clark of his confinement. And lastly, my opinion from the documents I reviewed about the apparent indifference to the mental health needs of inmates by Mr. Coupe and Mr. Pierce.

(D.I. 245 at 128:10–17).

In the first motion in limine, Defendants seek to exclude Dr. Grassian's testimony about the adequacy of Plaintiff's mental health treatment while in solitary confinement. The jury in the first trial found, "[Plaintiff did not] prove that he was deprived of his Eighth Amendment rights to adequate medical care while he was in solitary confinement." (D.I. 237 at 2). I do not think Plaintiff can again offer testimony that the first jury rejected. Defendants incorrectly cite the exact testimony they seek to exclude.⁴ I think the following is what Defendants seek to exclude.

> Q. And you have an opinion here about how solitary confinement made mental health treatment much more difficult, if not impossible. What was your basis for that?
>
> A. Well, first of all, in general, it's true, and I testified about that. But in Angelo's case, there's evidence from the mental health people who have given depositions in this matter that while it was harder to access inmates and give them privacy because of, you know, having to take them out and being timed, it was really -- it was apparently really discouraged in the prison that -- where he was

---

³ The verdict on the first and second theories was subsequently affirmed by the Court of Appeals. *Clark v. Coupe*, 55 F.4th 167, 175 n.7 (3d Cir. 2022).

⁴ In Defendants' reply (D.I. 318-1, Ex. 6 at 88 of 104), they cite particular testimony (D.I. 245 at 146:6–17, 162:12–163:8, 165:9–167:20) but the cited testimony is about other things. Defendants might be using a version of the transcript that does not match what is on the docket.

2

housed at the John T. Vaughn Correctional Center. And they -- so the people who were trying to help him, the mental health folks really just weren't able to get any kind of adequate access to him. No confidentiality at all, as I said. There were many more patients for the nurse to manage.

Q. Why is confidentiality important?

A. You're talking about things that you're ashamed of, that you're embarrassed about. You're shamed of. You're frightened. You need to have, you know, trust and privacy to talk about those things. You're not going to talk about them when everyone else can hear them. I mean, you think you're going to be killed, that there are people out to kill you and you're going to say that out loud? No. You know, you're seeing things. You're hallucinating. You're going to let people know that? No. Obviously, you need to have privacy for any of that to be discussed and treated.

Q. All right. And then you went on and you have some talking about the frequency or infrequency of counseling?

A. Yes, apparently hardly any counseling and very infrequent visits for medication management. Again, you know, this is not an uncommon problem in solitary, but in Delaware at John T. Vaughn, paranoia is really clear. You weren't supposed to do it. You weren't supposed to ask for it. And so your access to your own patients was restricted by the corrections folks.

Q. And the last point here about "Treatment refusal - expected," what is that talking about?

A. Basically, you know, this is about the group, this so-called group therapy that he was being offered towards the latter part of his stay in solitary. And as I said, I mean, you know, he's already so paranoid and psychotic. And this thing is so weird, you know, people in individual cages and all that. Of course, it's not surprising that he would refuse to go. He's going to be killed. He was afraid to leave solitary confinement because of that.

Q. So talk about the people in individual cages, so the jury understands what you're talking about there.

A. What they would do is they would put each prisoner in an individual cage so that the prisoners -- really small cages so that the prisoners couldn't actually see each other, but they would see the so-called therapist or cycle educator. And there was no real interaction between the inmates, it was just mostly being talked to. And you know, what was the benefit? The most important benefit really was it got them out of their cell. But was it therapy? Not really. I mean, I've actually sat in on one of these sessions, not in Delaware, but in New York at Attica and I mean -- I mean, I was very respectful and stuff, but when I actually was asked at dinner later on, you know, what happened in that session? I just burst out laughing. I didn't know I was going to. It's just actually to describe it, I mean, as therapy was a farce.

3

(D.I. 245 at 167:15–170:2).

The above testimony as presented would be problematic in the upcoming trial.[5] Simply excluding it would also be problematic, partly for the reasons identified by Plaintiff at the pretrial conference. (*See* Pretrial Tr. at 49:13–53:17). That is, mental health treatment could be constitutionally adequate and yet not prevent the other deleterious effects of solitary confinement. It would be hard to have a trial and not say anything about Plaintiff's mental health treatment. I say this notwithstanding that the Court of Appeals rejected Defendants' argument that "[in]adequate medical care is an essential element of [Plaintiff's] conditions of confinement claim." *Clark v. Coupe*, 55 F.4th 167, 177 (3d Cir. 2022). Thus, I think some of Dr. Grassian's opinions about care have to be excluded, but not all of them. I have to draw a line that I hope will not be too hard to follow at the trial. Dr. Grassian is prohibited from testifying or intimating that the mental health care treatment that Plaintiff obtained while in solitary confinement was constitutionally inadequate. Thus, for example, Dr. Grassian cannot testify that the mental health treatment was "impossible," "inadequate," "discouraged," meaningless, a "farce," or use similar terms. But Dr. Grassian can testify that the mental health treatment Plaintiff received did not ameliorate the consequences ensuing from seven months in solitary confinement.

Defendants' motion in limine regarding Dr. Grassian's testimony raised two other issues. (D.I. 318-1, Ex. 6 at 81–82 of 104). Plaintiff did not respond to either of them. (*Id.* at 85–86 of 104). First, Defendants seek to exclude any opinion that placing Plaintiff in solitary confinement itself posed a substantial risk of serious harm. (*Id.* at 81 of 104). The issue in this case is about the length of Plaintiff's stay in solitary confinement, not whether he should have been placed

---

[5] As I understand Dr. Grassian's testimony from the first trial, his other opinions about the devastating effects of long-term solitary confinement on Plaintiff are not dependent upon his testimony that Plaintiff received inadequate mental health care while in solitary confinement.

there in the first place. As the Court of Appeals held, "Why a prisoner is placed in solitary confinement is not an element in challenging that condition [of confinement]." *Clark*, 55 F.4th at 177 n.9. I thus agree with Defendants on the merits of this argument, and, as noted, Plaintiff's response did not address the issue, and thus it is also forfeited. I GRANT this part of the motion. Second, Defendants seek to exclude any testimony from Dr. Grassian about Defendants' state of mind. (D.I. 318-1, Ex. 6 at 82 of 104).[6] Plaintiff did not respond to this argument either. I GRANT this part of Defendants' motion too. Dr. Grassian is prohibited from testifying about what either Defendant knew or ignored.

Thus, in sum, Defendants' first motion in limine is **GRANTED** in part and **DENIED** in part as set forth above.

The second motion in limine relies upon the jury verdict in the first trial. There the jury found that Plaintiff did not "prove that he was deprived of his Eighth Amendment rights by being placed into solitary confinement because of his mental illness," and that Plaintiff did not "prove that he was deprived of his Eighth Amendment rights to adequate medical care while he was in solitary confinement." (D.I. 237). Defendants seek to exclude testimony and argument inconsistent with those two verdicts on the undoubtedly correct understanding that the two verdicts are the law of the case. (D.I. 318-1, Ex. 6 at 90–91 of 104).[7] Plaintiff's response is two-fold. (*Id.* at 99–101 of 104). First, Plaintiff argues that the jury's finding that Plaintiff did not prove that he received inadequate medical care does not mean that he received adequate medical care. Second, Plaintiff argues that the jury could have found against him, not because he

---

[6] In the first trial, Dr. Grassian testified about what Defendants knew. (D.I. 245 at 171:7–172:22).

[7] The Court of Appeals makes clear that resolution of this motion is a "law of the case" issue. *See Clark*, 55 F.4th at 175–77.

5

received adequate medical care, but because even though he proved he received inadequate medical care, he failed to prove Defendants were deliberately indifferent or that there was supervisory liability.

I think Plaintiff's first argument in some ways misses the point. In the first trial, Plaintiff tried to prove that he received constitutionally inadequate medical care. He failed. He cannot try to prove it a second time.[8]

I think Plaintiff's second argument is also not well taken. No matter how Plaintiff slices it,[9] the jury found Plaintiff did not prove Defendants liable for providing inadequate medical care. Thus, the law of the case limits Plaintiff not only in connection with Dr. Grassian's testimony but also with such other evidence as Plaintiff would offer to show constitutionally inadequate medical treatment.

---

[8] I think Federal Rule of Evidence 403 is also relevant here. It would be incredibly confusing to the jury for there to be testimony that the care was poor or just above the minimum constitutionally required or something like that. Given the prior jury's finding, and the fact that inadequate medical care is not required for Plaintiff to prove his conditions of confinement claim, the trial should not be about exactly how to characterize the medical care that he was given. The probative value of such evidence is substantially outweighed by the risk of confusion of the issues.

[9] I think it is clear that what the jury specifically found was that Plaintiff's medical care was not so bad as to constitute constitutionally inadequate medical care. The jury instructions broke down the issues into two parts—(1) whether Plaintiff "was deprived of medical care to such an extent that his 8th Amendment rights were violated" (D.I. 248 at 686:21–23), and (2) whether Defendants had supervisory liability for such deprivation (*id.* at 687:10–691:14). The verdict form (D.I. 237) mirrored the jury instructions, with the question of supervisory liability being set forth in separate questions that the jury did not reach since it had found there were no constitutional violations. In the jury instructions, "deliberate indifference" was only mentioned (and required) in connection with supervisory liability. (D.I. 248 at 688:2–691:14). "Deliberate indifference" was not part of the description of what was required to find the constitutional violations.

6

The second motion in limine also seeks to preclude testimony that Plaintiff was placed in solitary confinement because of his mental illness. Plaintiff did not respond to this argument. Plaintiff is therefore prohibited from offering such testimony.

Thus, the second motion in limine is **GRANTED** as set forth above.

Defendants proposed two "admitted" facts. (D.I. 318 at 2–3, ¶¶ 20–21). While I agree that they follow from the jury verdict, I am not going to present them to the jury. Unlike the other narrow "admitted" historical facts, they are both presented in the negative (one a double negative!) and divorced from context. By the rest of this Memorandum Order, I think I have precluded Plaintiff from presenting evidence or arguing contrary to the two proposed facts. I think that is all that is needed.

IT IS SO ORDERED this 20th day of June 2024.

_____
United States District Judge